[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court is the application for a turnover order filed on October 18, 2002, by the Cadle Company in accordance with §52-356b. Pursuant to said application the Cadle Company seeks, in pertinent part, an order that Attorney William Gambardella and Catherine Ahern turn over to Marshal Charles Vigiano funds in the amount of "$72,844 or such other amount as is held in trust for Catherine Ahern." Said application should be granted.
The court finds the following facts to have been proven by clear and convincing evidence. Dietter v. Dietter, 54 Conn. App. 481.
In December 1989 when Robert Dietter, Sr. and Catherine Dietter (now Catherine Ahern) were husband and wife, they executed a note in the principal amount of $250,000 payable to Great Country Bank. Said note was secured by a mortgage on real property known as 57 Darley Drive, Hamden, Connecticut.
Said mortgagors defaulted on said note and mortgage.
On January 11, 1993, a judgment of strict foreclosure was entered, and subsequently, on May 10, 1993 a deficiency judgment in the amount of $99,676 was entered against the mortgagors.
On June 10, 1994, Great Country Bank assigned said deficiency judgment in the amount of $99,676 to the Cadle Company
In 1996, Robert Dietter, Sr. and Catherine Dietter were divorced.Dietter v. Dietter, supra, 54 Conn. App. 481. Subsequently those parties reached a property settlement pursuant to which Catherine Dietter received $110,000 in a lump sum.
In 2001, Catherine Dietter married William Ahern. She is now Catherine Ahern. CT Page 1791
On September 6, 2002, Robert Dietter, Jr. (a son of Catherine Ahern) and his wife, Sandra Dietter, entered into a real estate purchase agreement to sell 25 Vista Road, North Haven to William J. Ahern for the sum of $230,000. As the buyer, William Ahern agreed to make an initial deposit of $70,000; Catherine Ahern was not a party to said real estate purchase agreement.
Although she was not a buyer under said agreement, Catherine Ahern delivered, as the initial deposit under said agreement, a bank check in the amount of $70,000, dated August 26, 2002, payable to the order of William V. Gambardella as trustee. Catherine Ahern received no equivalent value for said initial deposit of $70,000. McPherson Oil Co. Inc. v.Marsey, 643 So.2d 595; In re Marlar, 252 B.R. 743, 759 (Ark.).
As borrowers, William Ahern and Catherine Ahern applied to New Haven Savings Bank for a mortgage to be used for the purchase of 25 Vista Road. By residential mortgage commitment letter dated September 23, 2002, said bank approved said application in the amount of $160,000 which provided that title to the property would be in the name of William J. Ahern and that the note secured by the mortgage would be signed by William J. Ahern and Catherine Ahern.
The Cadle Company is a creditor of Catherine Ahern and she is a debtor of the Cadle Company by reason of the deficiency judgment against her and Robert Dietter, Sr. entered on May 10, 1993. General Statutes § 52-552b
(4), (6).
Robert Dietter, Jr. is a son of Catherine Dietter and thereby he and his wife are each an "insider." General Statutes § 52-552b (7) (11).
The delivery of $70,000 to Attorney Gambardella to be held as a deposit under the contract for the sale of 25 Vista Road, North Haven is a transfer. General Statutes § 52-552b (12).
When Catherine Ahern transferred said $70,000, she was insolvent in that she was not able to pay her debts that were due and her debts were greater than all of her assets and said $70,000 constituted substantially all of her assets; and after transfer of said $70,000 she had no money to pay the debt in the principal amount of $99,676 which she owed to the Cadle Company. General Statutes § 52-552c (a).
When Catherine Ahern transferred said $70,000 she knew she was insolvent, she knew she was indebted to the Cadle Company in an amount greater than $70,000, and she knew that the Cadle Company was actively CT Page 1792 seeking to locate her assets by reason of being served by a marshal with postjudgment remedy interrogatories (October 27, 2001), subpoena duces tecum for a deposition (December 11, 2001), subpoena duces tecum for a deposition (December 28, 2001) and a property execution (August 21, 2002) which was not satisfied.
The court finds that said transfer of $70,000 is fraudulent as to the Cadle Company as provided by General Statutes § 52-552e (a) (2) and § 52-552f (a).
The third-party claimants, William Ahern, Robert Dietter and Sandra Dietter,[1] assert a claim to the fraudulently transferred assets of the defendant, Catherine Ahern. The third-party claims fail because the assets remained the property of Catherine Ahern at the time of the attempted garnishment by the plaintiff, the Cadle Company.
The Cadle Company, a creditor of Catherine Ahern, seeks a turnover order against her under the Uniform Fraudulent Transfer Act (UFTA), General Statutes §§ 52-552a to 52-552l. The court has found that the transfer of $70,000 by Catherine Ahern to William Gambardella, the attorney of Robert Dietter and Sandra Dietter (the Dietters), has been proven to be fraudulent as to the Cadle Company by clear and convincing evidence under General Statutes §§ 52-552e (a) (2) and 52-552f (a). William Ahern and the Dietters nonetheless assert that the Cadle Company may not garnish the $70,000 because the sum ceased to be the property of Catherine Ahern once it was transferred to Gambardella.
William Ahern and the Dietters rely on FW Welding Service, Inc. v. ADLContracting Corp., 217 Conn. 507, 587 A.2d 92 (1991), to support their contention that "[a] writ of garnishment subjects to the claims of a creditor only a debt which, at the time of garnishment, was due to the underlying debtor." Id., 515. That case, however, did not involve a fraudulent transfer and is thus inapposite to the present case. The contentions of William Ahem and the Dietters that the $70,000 was no longer the property of Catherine Ahern ignores the axiom that "[t]he principle upon which in such cases the creditor may have redress by garnishment, is that the transfer, being fraudulent, is as against acreditor void; and although the title may pass to the fraudulent grantee as between the parties, yet, as against a creditor, the grantee may be treated as mere trustee and bailee of the goods." (Emphasis added; internal quotation marks omitted.) Seigel v. Heimovitch 128 Conn. 543,544-45. "The [UFTA] is `designed to protect creditors. It allows creditors to have a court void a fraudulent transfer if it was a sham or to hide assets.' 34 H.R. Proc., Pt. 14, 1991 Sess., p. 5355, remarks of Rep. Mintz." National Loan Investors, L.P. v. World Properties, Superior CT Page 1793 Court, complex litigation docket at New Britain, Docket No. X03 CV 98 0491738 (June 27, 2002, Aurigemma, J.) (32 Conn.L.Rptr. 488, 491). In the present case, the fraudulent transfer is void, and the $70,000 therefore remains the property of Catherine Ahern.
William Ahern and the Dietters also contend that the transfer was not fraudulent, but was made as a deposit to be held in escrow by Gambardella pending the closing of a real estate purchase and sales agreement between William Ahern and the Dietters. Although it is unclear from their memoranda of law, William Ahern and the Dietters also appear to rely on the good faith exception delineated in General Statutes § 52-552i
(a), which provides that "[a] transfer or obligation is not voidable under subdivision (1) of subsection (a) of section 52-552e [transfers fraudulent as to present creditors] against a person who took in good faith and for a reasonably equivalent value." The court, however, has already found that the transfer was fraudulent because, inter alia, Catherine Ahern received no equivalent value for the $70,000 as required by both §§ 52-552e (a) (2) and 52-552i (a). In this context, "[v]alue is given for a transfer . . . if, in exchange for the transfer . . . property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." (Emphasis added.) General Statutes § 52-552d
(a).
In the present case, the transfer was executed almost two weeks before the real estate contract was signed, and, therefore, at best, was given for "an unperformed promise" that is specifically excluded from the definition of value under § 52-552d (a).[2] The parties have presented no evidence that the transaction was made "in the ordinary course" of the business of Gambardella, William Ahern, or the Dietters "to furnish support to the debtor or another person." General Statutes § 52-552d (a). Moreover, Catherine Ahern was not even a party to the purchase agreement. Catherine Ahern's transfer of the $70,000 to Gambardella was fraudulent and void.
Accordingly, the application for turnover order filed by the Cadle Company is granted and William Gambardella and Catherine Ahern are ordered to turn over to Marshal Charles Vigiano funds in the amount of $70,000 held in trust for Catherine Ahern and documentary evidence of title to such funds.
Ronald J. Fracasse, Judge Trial Referee